**In re GREENWOOD BUILDING SUPPLY, INC., Debtor.**

**Bankruptcy No. 82–02017–2–11.**

United States Bankruptcy Court, W.D. Missouri.

Oct. 19, 1982.

Steve Block, Independence, Mo., for debtor.

Mark Foster and Irvin C. Ness, Kansas City, Mo., for U.S. Bancorp Financial, Inc.

## MEMORANDUM OPINION AND ORDER

JOEL PELOFSKY, Bankruptcy Judge.

In this Chapter 11 case, debtor has moved for use of cash collateral, alleging that U.S. Bancorp Financial holds a security in all items by which the debtor does business. Debtor contends that U.S. Bancorp is adequately protected. U.S. Bancorp objected to the use of cash collateral contending that it was not adequately protected. A hearing on the Motion was held at which time debtor appeared by counsel and its president and creditor appeared by counsel and its representatives.

At the close of the evidence the Court, from the bench, authorized the use of cash collateral conditioned upon the payment to U.S. Bancorp of 20% of amounts collected from sales and receivables and reports to be made to U.S. Bancorp reflecting the company's activities. The matter was then taken under advisement to allow the parties to file briefs.

Section 363(c)(2) of the Code, Title 11, USC, authorizes the use of cash collateral if "each entity that has an interest in such cash collateral consents; or" after a hearing, the Court authorizes such use. Here the interested creditor does not consent to the use. It is apparent that debtor must be able to sell the cash collateral or it cannot reorganize. At the same time, the creditor is entitled to adequate protection of its interest. The debtor has the burden of proof on this issue. Section 363(e).

Prior to the date of filing and thereafter, the collateral offered for security was a mix of inventory, accounts receivable and other items associated with the business and of property held by principals in the corporation and offered as guarantees of the corporate debt. The amount owed the creditor exceeds the value of the inventory and accounts receivable. Creditor argues that the collateral pledged by the corporation, together with the guarantees does not provide adequate protection, citing *In re Kenny Kar Leasing, Inc.,* 5 B.R. 304, 6 B.C.D. 677 (Bkrtcy.C.D.Cal.1980) and *In re Earth Lite, Inc.,* 9 B.R. 440 (Bkrtcy.M.D.Fla.1981).

Concepts of adequate protection were contained in prior bankruptcy legislation. The idea of an indubitable equivalent was coined by Judge Learned Hand in *In re Murel Holding Corporation,* 75 F.2d 941 (2nd Cir. 1935). In that case, reviewing a plan of arrangement, the Court held that the payment over ten years was not the equivalent of present payment. The Court noted that adequate protection had to be completely compensatory. In addition, the Court noted junior holders could not receive treatment over a senior holder, unless the senior holder's interest was a substitute of "indubitable equivalence". 75 F.2d at 942.

This concept is incorporated into the Bankruptcy Code in Section 361(3) of the Code. The House Report notes that the methods of providing adequate protection "are neither exclusive nor exhaustive. They all rely, however, on the value of the protected entity's interest in the property involved." House Report No. 95–959, 95 Cong., 1st Sess. 339 reprinted in 2 App. Collier on Bankruptcy (15th Ed.), U.S.Code Cong. & Admin.News 1978, p. 5787.

The evidence shows that debtor could not reorganize without the use of cash collateral. The evidence also shows that the creditor was loaning money on the basis of the collateral but had ceased doing so prior to the bankruptcy being filed. Loans were made at about 75% of the value of the accounts receivable. The guarantees were obtained prior to the filing. Apparently the creditor was not satisfied with collateral consisting only of the assets of the business.

In an earlier decision this Court noted that at the outset of a Chapter 11 case the creditor was not entitled to more

protection than it had obtained as a result of arms length business negotiations. *In re Heatron,* 6 B.R. 493 (Bkrtcy.W.D.Mo.1980). There is a presumption in favor of reorganization. Of course, if it is obvious that the debtor cannot reorganize or that it has wasted assets, the Court should reach a different conclusion. There is no such evidence here.

While the court in the *Kenney Kar* Case, supra, rejected the guarantees as providing adequate protection, the later decision in *Earth Lite,* supra, distinguished that holding from its ruling for substantial and persuasive reasons. In *Earth Lite,* as here, and unlike *Kenney Kar,* the guarantees are secured. In addition, the guarantor here is the principal in the corporate debtor. Additionally, at this early point in the case, the Court gives great weight to the fact that the guarantee was bargained for by the creditor. As the legislative history notes "the purpose of this section [§ 361] is to insure that the secured creditor receives in value essentially what he bargained for". House Report No. 95–595, 95th Cong., 1st Session 339 reprinted in 2 App. Collier on Bankruptcy (15th Ed.).

The guarantee is what the creditor bargained for here. It is not a bald guarantee but is supported by security interests in real estate. While there is a dispute as to the value of various items, the Court finds that the value of all of the property in which the creditor has an interest exceeds the debt. The Court also finds that the going concern value of the debtor's business far exceeds its liquidation value.

Of course, this situation is not static. An equity cushion is not sufficient to provide adequate protection since sales and interest accruing will diminish the cushion. The Court, therefore, authorizes the use of cash collateral on the following conditions:

(1) Payment to the creditor on a weekly basis of an amount equal to 20% of the amounts collected from sales and accounts receivable.

(2) Purchases of new inventory to support sales of approximately $100,000 per month, in which inventory the creditor shall have a security interest.

(3) Daily reports of all sales and collection activities are to be mailed to creditor.

(4) The creditor may, from time to time and after reasonable notice, inspect, inventory and audit, at its own expense, the premises, property, and books of the debtor.

(5) Creditor is granted a lien on all accounts receivable which arise after the filing of the bankruptcy.

This Order constitutes Findings of Fact and Conclusions of Law as required by Rule 752, Rules of Bankruptcy Procedure.